### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HILTI AKTIENGESELLSCHAFT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 22-1383-CJB |
| | ) |
| | ) |
| SPECIFIED TECHNOLOGIES INC., | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM ORDER

The Court, having reviewed the parties' motions for claim construction ("motions"), (D.I. 84; D.I. 86), and having considered the legal standards relating to claim construction, *see Vytacera Bio LLC v. CytomX Therapeutics, Inc.*, Civil Action No. 20-333-LPS-CJB, 2021 WL 4621866, at *2-3 (D. Del. Oct. 7, 2021), hereby addresses the construction of term 1 (the only remaining term the Court has not yet construed that was addressed in the motions): the preambles of claim 1 of the asserted patents. (D.I. 83 at 6-7; D.I. 88-1 at 1-3)

The parties' initially-proposed constructions for term 1 are set out in the chart below:

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "A dynamic, thermally insulating and sealing system for effectively thermally insulating and sealing of a safing slot within a building construction having a curtain wall construction defined by an interior wall surface including at least one vertical and at least one horizontal framing member and at least one floor spatially disposed from the interior wall surface of the curtain wall construction defining the | The preamble is limiting.<br><br>"A thermally insulating and sealing system for effectively thermally insulating and sealing of a safing slot within a building construction having a curtain wall construction defined by an interior wall surface including at least one vertical and at least one horizontal framing member and at least one floor spatially disposed from the interior wall surface of the | Partially Limiting<br><br>The phrase in the preamble: "A dynamic, thermally insulating and sealing system for effectively thermally insulating and sealing of a safing slot within a building construction having a curtain wall construction" is not limiting and need not be construed.<br><br>The remainder of the preamble is limiting and plain |

| | | |
|---|---|---|
| safing slot extending between the interior wall surface of the curtain wall construction and an outer edge of the floor"[1] | curtain wall construction defining the safing slot extending between the interior wall surface of the curtain wall construction and an outer edge of the floor, which system meets the requirements of standard method ASTM E 1399-97, Standard Test Method for Cyclic Movement and Measuring the Minimum and Maximum Joint Widths of Architectural Joint Systems, having a movement classification of class IV" | meaning should apply, which states: "defined by an interior wall surface including at least one vertical and at least one horizontal framing member and at least one floor spatially disposed from the interior wall surface of the curtain wall construction defining the safing slot extending between the interior wall surface of the curtain wall construction and an outer edge of the floor"<br><br>As to the limiting part of the preamble[,] these words and phrases require no construction and should be given their plain meaning such that they are *not* limited to systems that meet the requirements of ". . . standard method ASTM E 1399-97 . . .", as proposed by [Plaintiff]. |

(D.I. 83 at 6-7; D.I. 88-1 at 1-3) The United States Court of Appeals for the Federal Circuit has held that there are circumstances where one portion of a claim's preamble can be found to be limiting while another portion is not. *See Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1371 (Fed. Cir. 2020); *TomTom, Inc. v. Adolph*, 790 F.3d 1315, 1323 (Fed. Cir. 2015). And the dispute between the parties here is over whether the entire preamble of claim 1 is

---

[1] This is the preamble of claim 1 of asserted United States Patent No. 10,202,759 (the "'759 patent"). The preamble of claim 1 of the other asserted patent, United States Patent No. 11,339,566 (the "'566 patent") is not materially different and will not be reprinted here. (D.I. 83 at 7-8 & n.3) It is undisputed that the two preambles should be construed in the same manner. (D.I. 97 at 7-8)

limiting (Plaintiff's position) or whether only a portion of the preamble is limiting (Defendant's position). (D.I. 83 at 8, 14)

After reviewing the briefing and discussing the parties' positions at the March 21, 2024 *Markman* hearing, (D.I. 97 (hereafter, "Tr.")), the Court concludes that Defendant's position is essentially correct. The Court comes to this conclusion for the following reasons:

- Plaintiff argues that the first portion of the preamble that Defendant construes as not limiting is in fact limiting, in part because this portion provides antecedent basis for the term "safing slot" (a term also referenced later in the body of the claims). (D.I. 83 at 9, 27-28) However, at the *Markman* hearing, Defendant proffered a revised construction, in which Defendant asserted that only the portion of the preamble up to and including the wording "thermally insulating and sealing of" should be deemed non-limiting. (Tr. at 41-42) This alteration to Defendant's position (which the Court agrees would be appropriate) thus moots Plaintiff's "antecedent basis" argument regarding the term "safing slot."

- Plaintiff also argues in its briefing that the disputed portion of the preamble should be found to be limiting because it would provide antecedent basis for four other elements found in claim 1 or claim 2 of the patents: (1) "the horizontal framing member" in claim 1; (2) "the curtain wall construction" in claim 1; (3) "the floor" in claim 1; and (4) "the vertical framing member of the curtain wall construction" in claim 2. (*See* D.I. 83 at 31) But as Defendant rightly pointed out, "all of these elements of the claim body find support from the limiting portion of the preamble proposed by [Defendant.]" (*Id*. at 40-41) So this argument of Plaintiff's did not really make sense. And in light of this, it appears that despite Plaintiff's contentions, the preamble can be "neatly packaged into two separate portions"—one which is limiting and one which is not limiting. *See Bio-Rad Lab'ys*, 967 F.3d at 1371; (D.I. 83 at 40).

- Plaintiff additionally argues that the disputed portion of the preamble must be limiting because it uses the term "dynamic." Plaintiff asserts that the "dynamic" system referenced therein is essential to the invention and that this concept is not otherwise captured by the words in the remaining portion of the claims. (D.I.

3

83 at 8-13, 31-32)[2]  Plaintiff also suggests that this reference to a "dynamic" system in the preamble is an allusion to standard method ASTM E 1399-97 (the "ASTM E 1399 standard" or the "standard").[3]  (*Id*. at 10)  Relatedly, Plaintiff proposes that the preamble's reference to a "dynamic" system be further construed in the following way:  "which system meets the requirements of standard method ASTM E 1399-97, Standard Test Method for Cyclic Movement and Measuring the Minimum and Maximum Joint Widths of Architectural Joint Systems, having a movement classification of class IV."  (D.I. 88-1 at 1)  Plaintiff is correct that the asserted patents are rife with references to the system described therein being a "dynamic" system.  (*See, e.g.*, '759 patent at 1; *id*., cols. 3:18, 3:32-33, 3:65-66, 4:53-54; '566 patent at 1; *id*., cols. 1:17-22, 2:34-35, 5:63, 6:5-6)  Indeed, the word "Dynamic" is in the patents' titles.  ('759 patent at 1; '566 patent at 1)  And it is also true that in a few places, the '759 patent specification refers to a "dynamic system" as one that "complies with" or is "complying with" "ASTM E 1399[.]"  ('759 patent, cols. 3:7-9, 3:18-19, 7:43-44, 7:54-56; D.I. 83 at 10-12, 23, 31)  What is less clear, however, is what it is that would render the claimed system "dynamic" (including "dynamic" in a manner that "complies" with the ASTM E 1399 standard).  If, for example, the body of claim 1 of the patents already included a structure that made the claimed system "dynamic," then there would be no need to deem the disputed portion of the preamble limiting simply because it also included the word "dynamic."  And here, the intrinsic evidence suggests that what makes the system "dynamic" is the particular structure *that is set out in the claims' body*.  For example, when the specification makes reference to "[t]he dynamic, thermally . . . insulating and sealing system[,]" including one that "complies with the requirements of standard method ASTM E 1399," it repeatedly describes such a system by simply making reference to structural limitations found in the body of claim 1 of the patents.  ('759

---

[2]  *See Proveris Sci. Corp. v. Innovasystems, Inc.*, 739 F.3d 1367, 1373 (Fed. Cir. 2014) (noting that a factor suggesting that the preamble may be limiting is when it includes the "only reference in any independent claim to the inventive concept"); *see also Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) ("[W]hen reciting additional structure or steps underscored as important by the specification, the preamble may operate as a claim limitation.")).

[3]  The patents explain that the standard—"ASTM Designation: E: 1399-97" (Reapproved 2005)," which is formally titled "Standard Test Method for Cyclic Movement and Measuring the Minimum and Maximum Joint Widths of Architectural Joint Systems"—is "used for simulation of movements of the ground, such as for example an earthquake, or even movements under high wind load or life load."  ('759 patent, col. 3:9-17; *see also* D.I. 85, ex. C)

patent, cols. 3:17-26 (stating that "there is no system known that is used in a curtain wall structure that provides a dynamic system complying with ASTM E 1399, such as for example a curtain wall structure defined by an interior wall surface, which includes . . ."); *see also id.*, cols. 3:65-4:7, 4:53-62, 7:50-8:47; *see also* D.I. 83 at 15; Tr. at 45-46, 48-49, 63-64, 68; Defendant's *Markman* Presentation Slides, Slides 10-11) These portions of the specification seem to indicate that the inclusion of the structure claimed in the body of claim 1 is what makes the system "dynamic" in the manner being referred to in the specification. As a result, there is no need to import into the meaning of the claims the additional ASTM E-related phraseology suggested by Plaintiff's construction. (Tr. at 44 (Defendant's counsel explaining that "the structural components of the claim is the invention, and that's the part that is defining what this dynamic system is . . ."))[4]

- Moreover, as noted above, the ASTM E 1399 standard is repeatedly mentioned by name in the '759 patent specification. There are also a few portions of that patent's specification that make reference to a system having a movement classification of "class IV[.]" (*See, e.g.*, '759 patent, cols. 3:10-11, 3:41, 7:49) So if the patentee wanted to claim a system in the '759 patent that captured certain additional specific testing requirements discussed in the ASTM E 1399 standard, or if it wanted to claim a system requiring a movement classification of "class IV," then it surely knew how to do so. For example, in claim 1 of that patent, it could have made specific reference to "a movement classification of class IV." But it did not. This suggests that such more specific concepts were not meant to be claimed. (Tr. at 16-17); *cf. Wonderland Nurserygoods Co. v. Baby Trend, Inc.*, Case No. 5:14-cv-01153-JWH-SPx, 2020 WL 13680678, at *5 (C.D. Cal. Dec. 30, 2020).

---

[4] During the *Markman* hearing, Plaintiff's counsel disputed the idea that a "dynamic" system could simply be a system with the type of structure described in the body of claim 1 of the patents. This is so, counsel stated, because "'dynamic' is a [reference to] a particular type of movement" and the structure set out in the body of claim 1 simply discloses what elements make up the claimed "curtain wall construction"—and do *not* describe how the system is "going to move." (Tr. at 20) However, the record does not clearly support Plaintiff's assertion. For example, the "safing slot"—a term set out in the limiting portion of the preamble and in the body of claim 1—is said by the patent specification to "compensate dimensional tolerances of the concreted floor and to allow movement between the floor and the façade element caused by load, such as by life, seismic or wind load." ('759 patent, col. 3:27-30; *see also* Tr. at 21) And so even if a "dynamic" system is one that will move in a particular way, it appears that the elements of claim 1 (including a system that makes use of the claimed "safing slot") could still be describing what it is that makes the system "dynamic."

- Also notable is the fact that the '566 patent (which, like the '759 patent, includes claims to a "dynamic, thermally insulating sealing system") makes absolutely *no reference* to the ASTM E 1399 standard. The '566 patent's application was filed later than the '759 patent and it was also issued later than the '759 patent. ('759 patent at 1; '566 patent at 1) When one looks at the respective content of both patents' specifications, the fact that the '566 patent makes no mention of the standard (after the '759 patent made numerous references to it) seems like a conscious choice by the patentee. (D.I. 83 at 20-21, 44 (Defendant asserting that this indicates that Plaintiff "deliberately deleted every single reference to [the ASTM E 1399 standard] from the '566 patent specification" or "intentionally removed" such references from the '566 patent); Tr. at 28) The act of removing any reference to the standard from this patent certainly does not seem like a signal that the patentee intended to claim reliance on particular specific testing or performance requirements set out in that standard (such as a requirement for class IV movement). If anything, it appears to indicate that such requirements are *not* intended to be claimed therein. Put another way, if (as Plaintiff asserts) the use of the word "dynamic" in claim 1 of the '566 patent was meant to incorporate some essential (but otherwise unclaimed) aspect of the ASTM E 1399 standard, then it seems very strange that the way the patentee signaled this was by *deliberately scrubbing the patent of any possible reference* to that very same standard.[5]

For the foregoing reasons, the Court essentially adopts Defendant's proposed construction in the manner that follows: (1) The preamble is partially limiting.; (2) The first portion of the preamble up to the words "a safing slot" ("A dynamic, thermally insulating and sealing system for effectively thermally insulating and sealing of . . . ") is not limiting.; and (3) The remaining portion of the preamble (". . . a safing slot within a building construction having a curtain wall construction defined by an interior wall surface including at least one vertical and at least one horizontal framing member and at least one floor spatially disposed from the interior

---

[5] For what it is worth, in overcoming rejections to the patents' claims during prosecution, Plaintiff never argued that the claims were limited to certain portions of the ASTM E 1399 standard. (D.I. 83 at 25-27, 37, 41)

wall surface of the curtain wall construction defining the safing slot extending between the interior wall surface of the curtain wall construction and an outer edge of the floor") is limiting.[6] The Court sees no need to further construe this limiting portion of the preamble at this time (and the parties make no request that it do so).

Dated:  May 10, 2024

_Christopher J. Burke_
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

---

[6]  Again here, the Court reprints only the preamble from claim 1 of the '759 patent. But its decision should be applied to the (very similar) preamble of claim 1 of the '566 patent.

7